1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   ADAM S. POLSON, AZ Bar No. 022649
2  Adam.Polson@lewisbrisbois.com
   Phoenix Plaza Tower II
3  2929 North Central Avenue, Suite 1700
   Phoenix, Arizona 85012-2761
4  Telephone: 602.385.1040
   Facsimile: 602.385.1051
5
   Attorneys for Defendants Cottrell, Collars, and Baker
6
7              UNITED STATES DISTRICT COURT
8              DISTRICT OF ARIZONA, PHOENIX
9

10  Adam Bernard Sernas,                    Case No. CV19-00730-PHX-DJH (ESW)

11          Plaintiff,                      **DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT**
12      vs.
                                            **(Oral Argument Requested)**
13  Unknown Cantrell et al.,

14          Defendants.

15        This is a failure to protect claim.  Defendants Cottrell, Collars, and Baker hereby

16  move for Summary Judgment because Plaintiff cannot show that the Defendants exhibited

17  deliberate indifference in regards to an alleged attack on Plaintiff.  More specifically,

18  Plaintiff alleges two theories of the case, neither of which creates any genuine dispute as to

19  material facts, and Defendants are entitled to judgment as a matter of law.  Under

20  Plaintiff's first theory, he claims that he expressed unspecified general fears before he left

21  the Refuse to House ("RTH") unit, but the Ninth Circuit has found that summary judgment

22  is appropriate under such circumstances.  *Mickens v. Stafford Creek Correc. Ctr.*, 132 F.

23  App'x 691, 692-93 (9th Cir. 2005); *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir.

24  2007).  Under Plaintiff's second theory, he claims that Defendants conducted an

25  investigation, did not determine that Plaintiff was in danger, and Plaintiff voluntarily

26  agreed to leave RTH.  However, under that theory, Defendants are entitled to Summary

27  Judgment because Plaintiff cannot show that Defendants were aware of a substantial risk

28  to Plaintiff, and Plaintiff voluntarily agreed to leave RTH.  *Farmer v. Brennan,* 511 U.S.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4896-0530-0297.1

1   825, 844 (1994).  Because Plaintiff is unable to reveal who allegedly threatened him that

2   necessitated him going into RTH, and Plaintiff also is unable to reveal who allegedly hit

3   him, Plaintiff's claims fail because he also cannot show causation.

4        In the alternative, for the reasons set forth below, the Court should dismiss

5   Plaintiff's claims for future medical expenses and lost wages, and also dismiss Defendant

6   Brian Baker.

7        This Motion is supported by the Memorandum of Points and Authorities below as

8   well as the separately filed Separate Statement of Facts.

9   **MEMORANDUM OF POINTS AND AUTHORITIES**

10       **I.**    **Operative Facts**

11        Plaintiff has been serving a sentence for murder in the second degree since 2003.

12   (SSOF ¶¶ 1-2).  Although he formerly was a member of a gang, he purportedly renounced

13   his gang membership.  (SSOF ¶¶ 3-4).  Plaintiff has been in protective custody ever since.

14   (SSOF ¶¶ 4-5).

15        In September 2017, Plaintiff was living in protective custody in Barchey.  (SSOF ¶¶

16   7-8).  Per ADCRR paperwork, Plaintiff expressed fear due to gang issues, and he refused

17   to house.  (SSOF ¶ 9).  However, Plaintiff claims he refused to house because "somebody

18   asked [him] to hold something for them."  (SSOF ¶ 28).  Plaintiff did not advise of this

19   drug story at the time, and this story only was revealed when Plaintiff filed his Second

20   Amended Complaint.  (SSOF ¶¶ 8-9, 49, 51, 96-97, 100, 108, 116, 119).

21        Nonetheless, when Plaintiff arrived at RTH, he was interviewed by officers so that

22   they could understand why he refused to house.  (SSOF ¶ 14-15).  However, Plaintiff

23   could not or would not ever identify who threatened him.  (SSOF ¶¶ 28-38, 43-44, 53, 59,

24   68, 151-155).  Officers also could not force Plaintiff to identify who allegedly threatened

25   him.  (SSOF ¶ 24).  Given Plaintiff's refusal or reluctance to cooperate, it was unlikely that

26   officers could have ever identified any alleged threat.  (SSOF ¶¶ 59, 152-154).

27        Plaintiff initially testified that he last spoke with the Defendants months before he

28   left RTH.  (SSOF ¶¶ 56-58, 60-62).  Plaintiff later testified that he spoke with them shortly

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4896-0530-0297.1

2

1   before he left RTH.  (SSOF ¶¶ 63-64).  At that time, Plaintiff testified that he told them

2   about generalized and unspecific fears if he were to leave RTH.  (SSOF ¶¶ 68, 102, 110,

3   118, 129-130, 138-139, 155).  However, Plaintiff ultimately voluntarily decided to leave

4   RTH in February 2018.  (SSOF ¶¶ 65, 67).

5       Plaintiff was allegedly hit when he left RTH and returned to Barchey.  (SSOF ¶ 81).

6   To this day, Plaintiff will not say who hit him or why he was hit.  (SSOF ¶¶ 75, 77-80, 82-

7   93, 96-99, 106-107, 114-115, 126-127, 134-136).

8       **II.     Legal Argument**

9           **a.  Defendants did not exhibit deliberate indifference towards Plaintiff**

10      The Eighth Amendment requires prison officials to protect prisoners from violence

11  at the hands of other prisoners.  *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).  When

12  prison officials transfer an inmate who alleges that his well-being will be in jeopardy with

13  the transfer, their action constitutes an Eighth Amendment violation only if it can be

14  shown that prison "officials acted with 'deliberate indifference' to the threat of serious

15  harm or injury by another prisoner."  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.

16  1986) (citations omitted); *see also*, *Redman v. County of San Diego*, 942 F.2d 1435, 1449

17  (9th Cir. 1991) (en banc).  The decision to transfer must display "deliberate indifference"

18  to the inmate's personal security.  *Redman*, 942 F.2d at 1449.  To act with deliberate

19  indifference, a prison official must both know of and disregard an excessive risk to inmate

20  safety; the official must both be aware of facts from which the inference could be drawn

21  that a substantial risk of serious harm exists, and he must also draw the

22  inference.  *Farmer*, 511 U.S. at 837.  Therefore, to establish a violation, an inmate must

23  first satisfy an objective requirement by showing that he has been transferred into

24  "conditions posing a substantial risk of serious harm."  *Id.* at 834.  Then, he must satisfy a

25  subjective requirement by showing that the defendant was aware of the risk and

26  disregarded it.  *Farmer*, 511 U.S. at 834, 837.

27      Here, the ADCRR written record shows that Plaintiff entered RTH due to gang

28  issues, but Plaintiff later concocted a story that someone asked him to hold onto drugs

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4896-0530-0297.1                                    3

1  when he filed his Second Amended Complaint.  (SSOF ¶¶ 8-9, 49, 51, 96-97, 100, 108,

2  116, 119).  Plaintiff's drug story was not documented until well after he was allegedly hit.

3  (*Id.*)    Nonetheless, what remains constant is that Plaintiff was unable to, for whatever

4  reason, identify who it was that threatened him prior to him entered into RTH.  (SSOF ¶¶

5  29, 36-38, 42-44).  Plaintiff also was unable to identify who allegedly hit him after he left

6  RTH.  (SSOF ¶¶ 75, 77, 79, 82-86, 90-93).

7      Plaintiff offers two stories as to how it was that he left RTH.  Plaintiff first testified

8  that he was afraid to leave RTH because of unspecified and generalized fears.  (SSOF ¶¶

9  68, 102, 110, 118, 129-130, 138-139, 155).  That testimony is suspect in that officers

10  testified that they would not let Plaintiff leave RTH if he expressed a fear to the officers.

11  (SSOF ¶ 22).  Defendant Cottrell specifically testified that Plaintiff would not be forced to

12  leave RTH if he stated he did not feel safe in doing so.  (SSOF ¶ 23).  Plaintiff next admits

13  that prison staff conducted an investigation, that they felt it was safe for Plaintiff to leave

14  RTH, and that Plaintiff voluntarily agreed to leave RTH.  (SSOF ¶¶ 65, 67).  Notably,

15  Plaintiff did not provide any valuable information to assist the officers' investigation, and

16  Plaintiff's expert even concedes that it was unlikely that officers would even be able to

17  successfully investigate Plaintiff's allegations given the nature of the allegations and

18  Plaintiff's refusal to cooperate.  (SSOF ¶¶ 28-38, 43-44, 53, 59, 68, 151-155).

19      Assuming Plaintiff's testimony that he relayed his fears to officers, such fears were

20  no more than generalized fears.  (SSOF ¶¶ 68, 102, 110, 118, 129-130, 138-139, 155).

21  Even years later, Plaintiff does not allege facts to support that any named Defendant knew

22  of, but disregarded, an excessive risk to Plaintiff's safety.  The standard "does not require

23  that the . . . official believe to a moral certainty that one inmate intends to attack another at

24  a given place at a time certain before that officer is obligated to take steps to prevent such

25  an assault," but it does require that the official "have more than a mere suspicion that the

26  attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted).

27  Plaintiff's testimony is that he spoke of generalized fears only, and there were no facts for

28  any officer to verify.  While there may be circumstances in which a plaintiff may maintain

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4896-0530-0297.1                                    4

a claim under the Eighth Amendment even when he has not identified the threatening inmate to the defendant officers, there must be factors from which a jury could conclude the officer was "aware of an obvious substantial risk to inmate safety[.]" *Farmer*, 511 U.S. at 843. However, at best, Plaintiff's testimony regarding his alleged fear was general, and not specific, and Summary Judgment is granted in those instances. *Mickens v. Stafford Creek Correc. Ctr.*, 132 F. App'x 691, 692-93 (9th Cir 2005) (affirming summary judgment where plaintiff expressed a general fear of assault, never named inmates he feared, and did not request protective custody); *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted) ("[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health"). Here, there is no evidence that Defendants had "more than a mere suspicion" that Plaintiff would be attacked, and there is no evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's safety. Give the evidence in the case, there was no deliberate indifference.[1]

On the other hand, assuming Plaintiff's testimony that the officers conducted an investigation, did not determine there to be any risk to Plaintiff, and that Plaintiff voluntarily agreed to leave RTH, that also does not show deliberate indifference. (SSOF ¶¶ 65, 67). There is no dispute that officers conducted some investigation when Plaintiff first entered RTH. (SSOF ¶ 14-15). Plaintiff would not have been forced to leave RTH if he did not feel safe. (SSOF ¶¶ 22-23). Under such circumstances, prisons officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844. Under even Plaintiff's version of what happened, the officers performed their investigation and did not

---

[1] Moreover, as discussed below, there is no information to suggest that Plaintiff was attacked for the generalized reason that he feared. Indeed, assuming Plaintiff was attacked, he could have been attacked for any number of reasons not related to anything.



1  disregard a risk of harm to Plaintiff.  Put differently, the fact that Plaintiff was later

2  allegedly hit does not show deliberate indifference.  Even Plaintiff's expert opines that

3  fights that can just happen in a prison facility, and that does not mean liability against

4  prison officials.  (SSOF ¶¶ 147, 157-160).  The law protects such officers because not

5  "every injury suffered by one prisoner at the hands of another . . . translates into

6  constitutional liability for prison officials responsible for the victim's safety." *Farmer*,

7  511 U.S. 833.  Thus, under Plaintiff's alternative theory, Defendants did not know of and

8  disregard an excessive risk to Plaintiff's theory.

9        While Plaintiff may argue to the Court that he was forced to leave RTH to avoid

10  discipline, that story also does not add up.  Had Plaintiff still expressed fear, even though

11  he was not specific about the alleged threats, he could have moved to a higher custody

12  level, but would not have been disciplined.  (SSOF ¶¶ 18-19).  However, Plaintiff

13  voluntarily agreed to leave RTH, and he would have had to confirm to officials that he felt

14  safe in order to leave RTH.  (SSOF ¶¶ 23, 65).  Plaintiff likely did not want to lose out on

15  the freedom he had at Barchey had he left Barchey.  (SSOF ¶ 21).  Nonetheless, prison

16  officials should be given deference in the adoption and execution of policies and practices

17  that in their judgment are needed to preserve discipline and to maintain internal security in

18  a prison. *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010) ("It is well established

19  that judges and juries must defer to prison officials' expert judgments").  Moreover,

20  despite expressing generalized and non-specific fears, Plaintiff still has presented no

21  evidence that he was in danger prior to leaving RTH, even to this day.

22              **b.  Defendants did not cause Plaintiff's injuries**

23        Plaintiff also cannot prove that Defendants caused Plaintiff's injuries.  Even

24  assuming Plaintiff can prove deliberate indifference, Plaintiff must also prove that such

25  "indifference was the actual and proximate cause of the deprivation of the inmates' eighth

26  amendment right to be free from cruel and unusual punishment." *Leer v. Murphy*, 844

27  F.2d 628, 634 (9th Cir. 1988).  By Plaintiff's own admissions, Plaintiff's claims fail as a

28  matter of law.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Specifically, there is no evidence in the record to suggest that Plaintiff was hit once he returned to Barchey because he refused to hold onto drugs some months earlier. (SSOF ¶¶ 75, 77-80, 86-93, 96-99, 106-107, 114-115, 126-127, 134-136). There is also no evidence in the record to suggest that Plaintiff was hit because of his former gang affiliation. (*Id.*) Plaintiff repeatedly testified that he did not know who hit him or why he was hit. (*Id.*) Plaintiff could have been hit for any number of reasons, and the fact that Plaintiff was allegedly hit once he left RTH does not by itself mean that Defendants caused Plaintiff harm.

This would be a much different case if Plaintiff named who allegedly asked him to hold onto drugs. Under such a scenario, Defendants could have investigated such matters, and ensured that Plaintiff was not housed in the same yard with such individuals. This also would be a much different case if Plaintiff identified his alleged attacker(s). In the case, the parties could have researched why Plaintiff was housed on the same yard with such individuals(s).

Plaintiff himself admits that he prevented a proper investigation into such matters. (SSOF ¶ 59). Plaintiff's prison expert testified that not all investigations will yield a determination into what happened, and this is especially true where an inmate refuses to cooperate. (SSOF ¶¶ 151-152). Moreover, Plaintiff's prison expert also testified that it would be unlikely for other inmates to voluntarily provide such information related to drugs and gang issues, which further stymied any investigation. (SSOF ¶¶ 153-154).

Along the same lines, even if Plaintiff stayed in RTH or even if Plaintiff was moved to a different facility altogether (i.e., not Barchey), Plaintiff still could have been hit for any number of reasons. (SSOF ¶¶ 25, 143-145, 159). Plaintiff's prison expert testified generally that prison fights are common, and that officers cannot stop every single fight. (SSOF ¶¶ 147, 156-157). Plaintiff's prison expert testified that officers are not "clairvoyant." (SSOF ¶¶ 142, 161). Plaintiff's prison expert further testified that simply because Plaintiff was allegedly hit, that does not mean that Defendants are liable. (SSOF ¶ 160).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiff also voluntarily agreed to leave RTH.  (SSOF ¶ 65).  Even Plaintiff agrees he could not stay in RTH forever because it was not a permanent housing situation.  (SSOF ¶¶ 13, 54, 163).  Rather than move to a facility with a higher custody level, Plaintiff chose to return to Barchey.[2]

### c.  Plaintiff cannot seek future medical expenses

While Plaintiff's disclosure speaks of future medical expenses, he testified that he was unaware of any such future medical expenses.  (SSOF ¶¶ 167-168).  Plaintiff's medical expert also testified that he was unaware of the cost of any future medical expenses.  (SSOF ¶¶ 169-171).  Thus, although Plaintiff's disclosure seeks future medical, Plaintiff should not be able to claim such expenses.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("uncorroborated and self-serving testimony," without more, will not create a genuine issue of material fact precluding summary judgment); *see also*, *Saide v. Stanton*, 135 Ariz. 76, 77, 659 P.2d 35, 36 (1983) ("Arizona courts have consistently followed the rule that in order for a trial court to properly submit the question of future medical expenses to the jury, the need for future care must be reasonably probable and there must be some evidence of the probable nature and cost of the future treatment").

### d.  Plaintiff cannot seek future lost wages

Along the same lines, although Plaintiff's disclosure speaks of future lost wages, Plaintiff testified at his deposition that he was able to work once he is released from prison.  (SSOF ¶¶ 164-165).  Plaintiff's medical expert testified that he was unable to state that Plaintiff would be unable to work once he is released from prison.  (SSOF ¶ 166).  Plaintiff also failed to retain an economist or vocational rehabilitation expert.  (SSOF ¶ 164).  Thus, per *Villiarimo*, Plaintiff's disclosure by itself does not preclude summary judgment on this issue.

---

[2] Officers testified that inmates generally would not be disciplined under such circumstances.  (SSOF ¶¶ 18-19).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    To the extent Plaintiff now claims that he is able to work, but that he would be able

2  to work less due to the injury, that is not something that Plaintiff properly disclosed.  The

3  Federal Rules of Civil Procedure require parties to disclose "a computation of each

4  category of damages claimed by the disclosing party." Fed.R.Civ.P. 26(a)(1)(A)(iii).

5  These disclosures are not optional, and Rule 26(a)(1) states that the party "must" make

6  them "without awaiting a discovery request."  Regardless, Plaintiff's uncorroborated and

7  self-serving testimony from his disclosure statement is insufficient to defeat summary

8  judgment.

9    **e.   Plaintiff never served the proper Baker defendant, and the Court**

10   **should dismiss Brian Baker**

11   While Plaintiff served a Brian Baker, Plaintiff never served Shawn Baker, who

12  actually was the "Baker" that Plaintiff dealt with.  (SSOF ¶¶ 172, 174-175).  Defense

13  counsel notified Plaintiff of this issue back on May 3, 2022.  (SSOF ¶ 173).  For a brief

14  period of time, the parties discussed the possibility of accepting service for Shawn Baker

15  and/or substituting in Shawn Baker for Brian Baker.  However, Shawn Baker retired in

16  2020, and defense counsel was never able to receive authorization to accept service or

17  appear as his attorney.  Plaintiff's counsel also never followed up on this issue.  Given the

18  time that has passed, and given that the time limit to serve Shawn Baker has well passed

19  (Fed.R.Civ.P. 4(m)), the Court should not permit Plaintiff to substitute in Shawn Baker for

20  Brian Baker.  Along the same lines, Brian Baker had nothing to do with these matters, and

21  he should summarily be dismissed.  (SSOF ¶ 175).

22   **III.   Conclusion**

23   For the foregoing reasons, the Court should dismiss Plaintiff's claims in their

24  entirety.  In the alternative, the Court should dismiss Plaintiff's claims for future medical

25  expenses and lost wages, and also dismiss Brian Baker.

26   / / /

27   / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DATED this 31st day of January, 2023

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____s/ Adam S. Polson_____
Adam S. Polson
Attorneys for Defendants Cottrell,
Collars, and Baker

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the foregoing document to the Clerk's office using the Court's CM/ECF System for filing and service of a Notice of Electronic Filing, thereby serving all counsel of record in this matter.

Kirstin T. Eidenbach
Erin Przybylinski
Jeremy Killkack
Hallinan & Killpack Law Firm
5240 East Pima Street
Tucson, Arizona 85712
kirstin@HLFAZ.com
erin@HLFAZ.com
jeremy@HLFAZ.com
*Attorneys for Plaintiff*

s/ Rena Crockett
47747-11

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ADAM S. POLSON, AZ Bar No. 022649
Adam.Polson@lewisbrisbois.com
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051

Attorneys for Defendants Cottrell, Collars, Baker, and
Galvan

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA, PHOENIX

| | |
|---|---|
| Adam Bernard Sernas,<br><br>          Plaintiff,<br><br>     vs.<br><br>Unknown Cantrell et al.,<br><br>          Defendants. | Case No. CV19-00730-PHX-DJH (ESW)<br><br>**AFFIDAVIT OF ADAM S. POLSON** |

STATE OF ARIZONA )
                 ) ss.
County of Maricopa )

The undersigned Affiant, after having been duly sworn and placed under oath deposes and says:

1.  My name is Adam S. Polson. I am an attorney of record for the Defendants in the above-captioned matter. I am over the age of twenty-one, I have never been convicted of a crime and I am fully competent and authorized to make this affidavit. The statements entered here are based upon personal knowledge and are true and correct.

2.  On this same date, Defendants have filed a Motion for Summary Judgment as well as a Separate Statement of Facts.

3.  Attached to the Separate Statement of Facts are the following exhibits:

    1.  Plaintiff's deposition transcript (excerpts)
    2.  Sernas 254
    3.  Sernas 255-256

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4857-6111-7518.1

4.  Cathy Cottrell deposition transcript (excerpts)
5.  Lisa Collars deposition transcript (excerpts)
6.  Sernas 102
7.  Sernas 104
8.  Sernas 106
9.  Sernas 272
10. Sernas 264
11. Sernas 262
12. Sernas 260
13. Sernas_Adams_000001-18
14. Will Adams deposition transcript (excerpts)
15. Plaintiff's initial disclosure statement (excerpts)
16. Dr. Lemke deposition transcript (excerpts)
17. Sernas Lemke Sernas_Lemke_000001-000008
18. Defendant's first supplemental disclosure

4.  The foregoing documents are true and correct copies of documents disclosed by the parties in this case and/or deposition transcripts from this matter.

5.  Further, Affiant sayeth naught.

Dated January 31, 2023

_____
Adam S. Polson

SUBSCRIBED AND SWORN TO before me, the undersigned notary public, on this 31st day of January, 2023, by Adam S. Polson.

_____
Notary Public

My Commission Expires:

LAURA M. NAGELKIRK
Notary Public - Arizona
Maricopa County
Commission # 603464
My Comm. Expires May 5, 2025

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4857-6111-7518.1

2