**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Bernard Sernas,<br><br>   Plaintiff,<br><br>v.<br><br>Unknown Cantrell, et al.,<br><br>   Defendants | No. CV-19-00730-PHX-DJH<br><br>**ORDER** |

Before the Court are the parties' Motions in Limine. Plaintiff has filed two Motions (Docs. 134 and 135) to which Defendants have filed Responses (Docs. 136 and 137)[1]. Defendants have filed four Motions (Docs. 130, 131, 132 and 133) to which Plaintiff has filed Responses (Docs. 138, 142, 143, 144.) The Court will address Defendants' Motions in turn.

**I. Background**[2]

Plaintiff, Adam Sernas filed a claim under 42 U.S.C. 1983, alleging that Defendants, Arizona State Prison Complex detention officers, violated his Eighth Amendment rights by failing to protect him from violence by other inmates. Plaintiff's claim is that Defendants Cantrell and Collars were deliberately indifferent to his fears based

---

[1] Further clarification of the parties proffered evidence is required for the Court to address Plaintiffs Motions in Limine Nos. 1 and 2. Therefore, the Defendants must come to the Final Pretrial Conference prepared to specify the type of testimony and evidence it seeks to introduce about Plaintiffs drug use and disciplinary history.

[2] These brief facts are taken from the Ninth Circuits Memorandum (Dc. 114-1). However, the Court's Summary Judgment Order more fully describes the background and history of facts leading up to the assault on Plaintiff. *See* (Doc. 107).

upon threats by other inmates and that they failed to protect him. Plaintiff alleges that he repeatedly informed Defendants that he was asked to hold drugs for other inmates but refused to so, which then resulted in threats of harm from other inmates in the general population unit. Plaintiff was in the "Refuse to House" unit when he informed officials of his fears, explaining that if he returned to the general population unit, Barchey, he would face injury or death. When correction officials returned Plaintiff to Barchey, he was attacked. Plaintiff was unable to identify the inmates who threatened him or who actually attacked him. Plaintiff alleges that Defendants Cantrell and Collars failed to protect him and failed to investigate the threats.

## II. Motions in Lime – Legal Standards

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court." *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42). Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), aff'd, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001). Motions in limine are "provisional." *Goodman v. Las Vegas Metro. Police Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), aff'd in part, rev'd in part, and dismissed in part on other grounds, 613 F. App'x 610 (9th Cir. 2015).

. . . . .

The Court issues its rulings on the record currently before it. Therefore, rulings on such motions "are not binding on the trial judge [who] may always change his [or her] mind during the course of a trial." *Id.* (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner))). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

## A.    Burden of Proof

Motions to exclude evidence require the party seeking exclusion to inform the Court of the evidence's substance with specificity. *See* Fed.R.Evid. 103(a)(2); *United States v. Bradford*, 905 F.3d 497, 505 (7th Cir. 2018)(finding a motion in limine did not satisfy Rule 103(a)'s specificity requirement by failing to identify the specific evidence or explain its admissibility).[3] The party offering the evidence and testimony at trial bears the burden of proof that it is relevant under Rule 401 and not prejudicial under Rule 403. Federal Rule of Evidence 401 provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402. However, all relevant evidence is subject to the balancing test set forth by Rule 403. That is, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

. . . . .

. . . . .

---

[3] Except where otherwise noted, all "Rule" references are to the Federal Rules of Evidence.

### III. Defendants' Motions in Limine
#### A. Defendants' Motion in Limine No. 1 (Doc. 130) Re: Plaintiff's Past Medical Bills

Defendants move to preclude Plaintiff from introducing any evidence or witnesses regarding his medical bills prior to his release from prison, arguing that Plaintiff did not timely disclose this evidence, and he failed to provide a computation of medical damages, including a proper itemization of expenses. (Doc. 130 at 1−2.) They also argue that the collateral source rule bars Plaintiff from seeking damages for medical expenses incurred while he was in state custody because his claims are against the State, and the State, not a collateral source, was required by law to pay those expenses. (*Id.*)

#### 1. Disclosure Issues

The parties do not dispute that Plaintiff did not disclose his in-custody medical bills to Defendants until April 29, 2025, well past the deadline to supplement disclosures and discovery, and he did not include these expenses in any prior computation of damages. Plaintiff presents evidence, though, that for the first time on March 13, 2025, he received notice from the Arizona Health Care Cost Containment System Administration (AHCCCSA) that AHCCCS paid those expenses and was seeking to recover its costs by asserting a lien/claim to any damages Plaintiff received in settlement of this action. (Doc. 138-1.) Plaintiff argues that counsel previously thought ADCRR paid all Plaintiff's in-custody medical expenses, so Plaintiff had no reason to seek compensation for those costs in this action. (Doc. 138 at 3.) Then, after receiving notice that AHCCCS paid these bills and was now asserting a lien for repayment, Plaintiff "obtained the bills as quickly as possible" and disclosed them to Defendants with the first draft of the Joint Proposed Pretrial Order (JPPO), thereby giving Defendants an opportunity to consider the AHCCCS lien prior to the final JPPO and ahead of trial preparation. (*Id.*)

Under these facts, Plaintiff's delayed disclosure was not purposeful and was substantially justified, and Defendants have not demonstrated any prejudice from the late disclosure. *See* Fed. R. Civ. P. 37 (sanctions for failure to disclose do not apply if the failure was "substantially justified or is harmless"). The proffered evidence also includes

itemized records of Plaintiff's medical expenses, so Defendants were not harmed by Plaintiff's failure to previously provide a computation of this category of damages.

### 2. Collateral Source Rule

The collateral source rule "permits an injured party to recover medical expenses from a tortfeasor, notwithstanding reimbursement of such expenses by the injured party from a third party, if such reimbursement is from a 'collateral source' and not from a tortfeasor." *Siverson v. United States*, 710 F.2d 557, 559 (9th Cir. 1983). The rule serves to "prohibit[] tortfeasors from avoiding liability for damages in situations in which an injured party has been compensated by a third party." *Sw. Fiduciary, Inc. v. Arizona Health Care Cost Containment Sys. Admin.*, 249 P.3d 1104, 1107 (Ariz. Ct. App. 2011). This means that a plaintiff who has already received compensation for his medical expenses from a third party, such as a private insurer, may also seek damages from the tortfeasor for the same medical bills, potentially resulting in double-compensation; however, he may not do so if the tortfeasor, not a "collateral source," covered those expenses. In applying this rule, Arizona courts make no distinction between third party payments from private insurers, government payors, or write-offs pursuant to contractual agreements with medical providers. *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 495 (Ariz. Ct. App. 2006).

Because AHCCCS, a third-party government payor, paid Plaintiff's pre-release medical bills, the collateral source rule entitles Plaintiff to seek compensation for those expenses in this action. *See Sw. Fiduciary*, 249 P.3d at 1109 ("Arizona's collateral source rule allows a victim whose medical expenses are paid by a government payor to seek recovery of those expenses from a tortfeasor"). Defendants do not meaningfully argue otherwise. They point out that, under Arizona law, the ADCRR director is required to "provide medical and health services" for state prisoners. (Doc. 130 at 2 (quoting Ariz. Rev. Stat. § 31-201.01(D)).) But they fail to acknowledge that the proffered evidence shows that AHCCCS, not ADCRR, actually *paid for* those services. Defendants also rely on Arizona Revised Statute § 31-201.01(E), which states that "[a]ny and all causes of action that may arise out of tort caused by the director, prison officers or employees of the

- 5 -

department . . . shall run only against the state," to argue that, here, the State is both the tortfeasor and the entity that paid for Plaintiff's medical care. (*Id.*) Hence, they argue, "if Plaintiff gets to introduce [his medical bills] at trial, the State may have to pay for such medical bills twice." (*Id.*)

As noted, Defendants fail to show that the State, via ADCRR, paid Plaintiff's in-custody medical bills. To the extent Defendants conflate AHCCCS with the State to support their double payment theory, this argument also fails. Even though AHCCCS is a state-run program operated by the AHCCCSA, it is not synonymous with the State; instead, it is a Medicaid plan that relies in large part on federal funding and approval to provide benefits to qualified residents. *See, e.g.*, *Arizona Hosp. &* Medicaid *Healthcare Ass'n v. Betlach*, 865 F. Supp. 2d 984, 986 (D. Ariz. 2012). Additionally, Plaintiff is not seeking damages for himself but merely to satisfy a lien AHCCCS placed on his potential damages in this action. Under Arizona law, AHCCCS has this right. *See* Ariz. Rev. Stat. Ann. § 36-2915 (AHCCCS "is entitled to a lien for the charges for hospital or medical care and treatment of an injured person for which [it] is responsible, on any and all claims of liability or indemnity for damages accruing to the person to whom hospital or medical service is rendered"). Moreover, "[f]ederal law *requires* states to establish procedures by which state Medicaid plans may be reimbursed by third-party tortfeasors for payments the plans make on behalf of injured persons to whom tortfeasors are legally liable." *Sw. Fiduciary*, 249 P.3d at 1109 (emphasis added). Plaintiff therefore not only has a right to seek damages under the collateral source rule but an obligation to do so to satisfy the lien AHCCCS lawfully placed on his potential damages in this action and will potentially suffer deductions from any damages awarded if these expenses are not included.

Defendants' Motion in Limine No. 1 (Doc. 130) is denied.

### B. Defendants' Motion in Limine No. 2 (Doc. 131) Re: Violation of Prison Policies

Defendants move to preclude Plaintiff's expert, Will Adams, from offering ultimate opinions on Defendants' alleged violation of prison policies, arguing that these opinions

go to the ultimate issue of the case. (Doc. 131 at 1.) As an additional ground for precluding the report, Defendants argue that Mr. Adams' statements that Plaintiff likely would not have been injured if staff had exercised due care and diligence are merely conclusory. (*Id.*) They claim Adams opines that "adherence to . . . proper investigation procedures . . . would likely have prevented [Plaintiff]'s injury," but make only "vague references to a complete investigation taking place" and "does not specify which prison policy was violated." (*Id.*)

### 1. Ultimate Issues

An expert witness may express an opinion on an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a); *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988), *overruled on other grounds by, United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000). "It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quotation omitted). "An ultimate issue opinion by a properly qualified expert should not be excluded except in the extreme case where the expert's opinion is inherently misleading or unfairly prejudicial." *Kinsey*, 843 F.2d at 389. But "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's [judgment]." *Id.* (quotation omitted).

Defendants object to Adams' statements in his report that Defendants' conduct in this action was deliberately indifferent. They claim without citation that "Adams states in his report that prison staff violated prison policies and procedures, resulting in deliberate indifference to Plaintiff's safety." (Doc. 131 at 2−3.) They correctly note that "whether the Defendants' alleged [conduct] amounted to deliberate indifference to a serious risk to the Plaintiff's safety" is an ultimate legal issue reserved for a jury. (*Id.* at 2.) *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (to prevail on an Eighth Amendment claim a plaintiff must make an objective showing of a substantial risk of serious harm and a subjective

showing of "deliberate indifference").

Defendants rely on *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994), for the proposition that experts must not substitute their opinion for that of the jury on this issue. (Doc. 131 at 2.) *Berry* stated,

> [t]he expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was *deliberately indifferent* to the welfare of its citizens.

25 F.3d at 1353 (emphasis in original).

Plaintiff argues that Mr. Adams never used the term "deliberate indifference" or the word "deliberate" in his report or deposition, and even though he used the word "indifference" or "indifferent" a few times, he did so only generally to refer to the lax attitude of all Barchey correctional staff toward their duty to protect prisoners (Doc. 139 at 1–2.) Plaintiff maintains that this use of the word comports with its standard dictionary meaning and that such use "in no way amounts to an improper attempt to instruct the jury and does not supplant their role." (*Id.* at 3.)

In the opinion section of his report, Mr. Adams frequently describes Barchey correctional staff as "inattentive" and "complacent" or as having a "general disregard" for prisoners' security concerns. (*See* Doc. 142-1 at 14, 15, 16, 17.) He also describes Defendant Cottrell's failure to affirmatively act to protect Plaintiff as "indicative of inattention to Mr. Sernas' request for protection and complacency." (*Id.* at 14,) And he opines that Defendants "failed to supervise and manage their areas of responsibility in a manner consistent with industry standards, due care, and to abide by their duty to protect Mr. Sernas from harm." (*Id.* at 17.) He similarly opines that Defendants "failed to exercise due care and caution to ensure Mr. Sernas was safe from harm." (*Id.* at 18.) Contrary to Defendants' argument, however, Mr. Adams never opines that Defendants' conduct equates to deliberate indifference. He uses the word "indifference," in only two places.

He states, "[i]t is my opinion that ADCRR staff at the Barchey facility in 2017 and 2018 were indifferent to Mr. Sernas and his security needs," and,

> [t]here was indifference and negligence regarding the duty of all correctional staff to protect the health and welfare of incarcerated persons by the staff at Barchey Facility in 2017 and 2018, and this indifference led to Mr. Sernas being severely injured and suffering long term effects from that injury.

(*Id.* at 18.)

The Court is not persuaded that minimal uses of the word "indifference" result in impermissible expert opinion on an ultimate issue of law. The two places where Adams uses the word indifference merely describe the attitudes of correctional staff, generally, not the state of mind of Defendants. Additionally, Adams employs this word colloquially, in the same vein as other adjectives, such as "inattentive" or "complacent," not in the precise, technical way courts define deliberate indifference for Eighth Amendment purposes. *See*, e.g., *Farmer*, 511 U.S. at 837 (explaining that an official acts with deliberate indifference if she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") Adam's limited uses of the word indifference, not "deliberate indifference," as used in the Eighth Amendment context, do not equate to offering an ultimate opinion on this legal issue or pervade the role of the jury to decide. As explained in *Diaz*, "it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." 876 F.3d at 1198. However, "if the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion." *Id.* at 1199. So, the Court cautions Adams that overuse of the term "indifference" and "deliberately indifferent" in his testimony may pervade the role of the jury.

. . . . .

### 2. Conclusory Opinions

To the extent Defendants also object to Mr. Adam's opinions as being merely conclusory on the ground that Adams does not identify specific policies in his report that Defendants violated, this argument is baseless. The report identifies several measures that Adams states, in his professional opinion, Defendants could have and should have taken to address the risk of harm to Plaintiff. These include Adam's opinion that correctional staff have an obligation to "conduct and document a thorough investigation" into a prisoner's allegations of a threat; that the assigned investigator has a duty to "look into all claims, interview sources, interview gang and narcotics officers, interview housing staff, and conduct other surveillance activities related to . . . communications monitoring;" and that "if management and classification staff do not have a completed and documented investigation to refer to . . . the inmate's version of events must be regarded as true . . . and the inmate transferred to housing in a facility away from that in which the threat originated and might still exist." (Doc. 142-1 at 11, 13, 16, 17.)

These opinions are not conclusory; nor does the report need to identify specific ADCRR policies Defendants violated to speak to the constitutional question at issue. Mr. Adams' opinions about what industry standards require and what he, in his professional opinion, believes should have been done to keep Plaintiff safe are relevant to this question. And Defendants' objections to the conclusory nature of these opinions merely go to the weight, not the admissibility, of Adams' report, and are not a basis to preclude Plaintiff from relying on this evidence at trial. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence . . . [that otherwise] meets the standards of Rule 702.").

Defendants' Motion In Limine No. 2 (Doc. 131) is denied.

. . . . .

### C. Defendants' Motion in Limine No. 3 (Doc. 132) Re: Plaintiff's Conclusory Expert Opinions

Although differently titled, Defendants' Motion in Limine No. 3 is substantively identical to their Motion in Limine No. 2. It is not clear why Defendants filed two Motions asserting the same arguments, but because the Court has already rejected those arguments, this Motion is moot.

Defendants' Motion In Limine No. 3 (Doc. 132) is denied as moot.

### D. Defendants' Motion in Limine No. 4 (Doc. 133) Re: Plaintiff's Experts Lemke and Adams Improper Disclosure

Defendants move to exclude Dr. Robert Lemke and William Adams from testifying at trial, asserting that they were improperly disclosed under Rule 26 and were not timely disclosed. (Doc. 133 at 1). Defendants say "Plaintiff attempted to disclose Dr. Lemke in his Third Supplemental Disclosure (Doc. 63) and William Adams in his Fifth Supplemental Disclosure (Doc. 87)[,] [h]owever both disclosures were improper." (*Id.* at 2). This, Defendants say, warrants their exclusion at trial.

Both Defendants and Plaintiff acknowledge that Dr. Lemke and Adams were disclosed as witnesses at Doc. 63 and Doc. 87. Plaintiff asserts that Defendants received his experts' reports in a timely manner and that "they deposed both experts within the court ordered time constraints [and] following their depositions," which occurred over two years ago. (Doc. 144 at 3). Thereafter, Defendants filed their Motion for Summary Judgment.

Defendants correctly point out that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*. Fed. R. Civ. P. 37(c)(1) (emphasis added). Though in its review of the docket, the Court cannot tell what form Plaintiff's disclosures took and to what extent they may or may not have conformed to Rule 26, clearly, Defendants are not prejudiced. As Plaintiff notes, both Dr. Lemke and Adams were deposed by Defendants. So, they were anticipated as witnesses by Defendants. Under these

- 11 -

1  circumstances, it is hard to see what, if any, prejudice Defendants face if Dr. Lemke and
2  Mr. Adams were permitted to testify.
3      Defendants' Motion in Limine No. 4 (Doc. 133) is denied.
4      **IT IS ORDERED** denying Defendants' Motions in Limine (Docs. 130, 131, 132
5  and 133).
6      Dated this 3rd day of June, 2025.

Honorable Diane J. Humetewa
United States District Judge